who is convicted in the Western District of New York for the murder of a young girl. The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Please be seated. And we'll take our next case, United States v. Evans. Mr. Yamamoto. Good morning, Your Honor. My name is Alan Yamamoto. I represent Rodriquies Evans who was convicted in the Western District of, not the Western District, in the District of West Virginia for four counts of drugs, methamphetamine to be exact. He was sentenced to four consecutive terms of 20 years imprisonment for a total of 80 years. The guidelines came out after calculation to a 48 with criminal history category of 4, which gave him essentially life in prison. That was why the court gave him 80 years. The issue is whether or not the court was correct in attributing the 2,966 grams of methamphetamine that was seized on March 24th from Cedric Douglas' vehicle. And whether that should be attributed to Mr. Evans. We would contend it does not. And if our contention is correct, then we ask the court to vacate the sentence, remand for further deliberation by the District Court and further determination of the amount of drugs that Mr. Evans should have been attributed with. The question is whether or not Mr. Evans... The question is whether or not it was reasonable to assume that Mr. Evans was aware of... Excuse me. Why don't you move... Tell us about relevant conduct and reasonable foreseeability. The issue is whether it was relevant conduct for Mr. Evans. In order for it to have been relevant conduct, it had to be within the scope of the jointly taken criminal activity and furtherance of the criminal activity and reasonably foreseeable for Mr. Evans. Now, the jointly taken criminal activity for Mr. Evans was to buy gram and ounce quantities of methamphetamine from Mr. Douglas and Mr. Gregory. The wiretaps of the government have five occasions where Mr. Evans purchases methamphetamine of ounce quantities. Three in February and two in March. There is no reason to believe that Mr. Evans was aware of the, we'll say, three kilos of methamphetamine that Mr. Douglas was transporting. In the wiretap conversations between Mr. Evans and Mr. Gregory, there's never any conversation of anything other than those few ounces that Mr. Evans is going to purchase. And Mr. Evans never discusses or never talks to Mr. Douglas on the phone at all. All conversations for Douglas are with Gregory. And those two have a relationship and working relationship selling drugs to Mr. Evans and other individuals. So, the scope of the jointly taken activity for Mr. Evans is the ounce quantities or gram quantities he buys. Can I ask you a question? Is it your position, I mean the district court, we don't have a written opinion, but we have the district court's discussion of this issue. And is it your position that the district court applied the wrong standard and asked only whether this ice seized from Douglas' car was within the scope of the overall conspiracy? Or you could be arguing one of two things and I'm not clear. You could be saying the district court applied the wrong standard or you could be saying the district court applied the right standard and it just didn't make the requisite findings as to the answer. So, it appeared to make the right evaluation, but did not. What the court said was that Mr. Let's ask that question another way. For purposes of this enhancement, is it sufficient that another individual's or co-conspirator's obtaining of illegal narcotics is within the scope of this conspiracy? Is that sufficient in and of itself for this enhancement to apply? No. The scope of the conspiracy between Mr. Evans and Mr. Gregory was the ounce quantities or gram quantities he was purchasing. So, in that circumstance, then the district court would have applied the wrong standard. Well, the jointly The scope of the jointly taken criminal activity between Evans and Gregory was the ounce and gram purchases. The district court didn't ask that question. The overall conspiracy was what the court looked at and court said that it found Douglas was a member of the conspiracy. The weight, the three kilograms, was within the scope of the conspiracy and were in furtherance of the conspiracy and were foreseeable. But the court did not specify, and this is the point Your Honor is making, the court did not specify how that related to Mr. Evans. It relates to the overall conspiracy, but not to Mr. Evans. So, it would be relating to the conspiracy between Mr. Douglas and Mr. Gregory. The court does not mention Mr. Evans when it discusses those drugs. Counsel, your position, and just assuming hypothetically, if that were correct, you would say that is by itself grounds to vacate the sentence and send this back. We don't need to reach any of your questions about the enhancements? Ultimately, I think the court at resentencing needs to look at the other enhancements, particularly the violence enhancement, because there was no basis for that enhancement to be granted. Is that the firearms? There's a firearms enhancement and there's a violence enhancement. What the court did was combine the two and say that when he had the firearm that had a drum magazine on it, that was per se violence and gave the two-level violence enhancement. I guess what I'm saying is if we agreed with you, hypothetically, on the drug attribution, we would be vacating the sentence anyway. The district court is going to have to do everything again anyway. You would want us to, in an advisory way, say next time you do this, you should think harder about this threat of violence enhancement? It seems like it would be kind of advisory at that point. I'm really trying to figure out what the right path is, if you are correct on your first argument. I think the court should vacate the entire sentence, remand to the district court, and tell the district court to reevaluate all the enhancements, including the enhancement for violence and the amount of drugs it determined that Mr. Evans was liable for. There were several enhancements here, not just the violence for firearms and the drug weight. If we thought the other enhancements were appropriately done, why would we tell the district court to revisit those? Obviously, it has to revisit in the context of what's the appropriate 3553A sentence. But if they got it right on some of those, why would we tell them to revisit them? We don't necessarily contend that the court got them right on all of them. I understand that. But should this court determine that some of the enhancements were valid, then I guess the court can tell the court below, these are the particular enhancements we think you need to review, because we don't believe they were correct. All right. What else do you have for us today, Mr. Alamoto? That's it. You've got some rebuttal time. All right. Thank you, Ms. Nogay. Good morning. May it please the court. My name is Carly Nogay, and I'm here on behalf of the United States. This court should affirm Rodriguez-Evans' conviction and sentence for three reasons. First, the district court did not commit clear error in attributing approximately three kilograms of methamphetamine to Evans because it was within the scope of the conspiracy, in furtherance of the conspiracy, and was reasonably foreseeable to Evans. Doesn't it have to be within the scope of Evans' agreement to participate jointly in the criminal activity, and the district court didn't apply that standard? Yes, Your Honor, that is the standard, and it was within Evans' – Okay, but we agree that the district court applied the wrong standard. Your Honor, the district court did look at the conspiracy in its entirety. All right. I've been a government counsel who has to defend some things, so – but I mean, I'm just looking at J-12. I'm looking at J-1224, and I'm looking at what the district court says. The jury found Douglas was a member of the conspiracy. The weight were within the scope of the conspiracy, were in furtherance of the conspiracy, and it was foreseeable. And then the court goes down and then says, then the entire conspiracy becomes the subject of this case and the subject of the sentencing. This court will overrule the objection with regard to weight. You agree, A, that's all the court sort of says about this? Yes, Your Honor. With respect to the district court, it's flatly inconsistent with comment 3 to 1.1b3. Like, that's just not – in fact, 1.1b3 says literally the opposite. It says the scope of jointly undertaking criminal activity is not necessarily the same as the scope of the entire conspiracy. I mean, it just seems that what the district court said is flatly contrary to what the guidelines say. Yes, Your Honor, but the – it's clear from the evidence presented at trial that Evans was involved in this entire conspiracy, so those drugs would have been foreseeable to him, and the district court did not err in attributing those drugs to him. Well, the fact that it could have been attributed, isn't the district court required to state its review of these particular items in the guidelines and tell the appellate court enough so that we're able to review the decision on how it's considered these? And that's – I'm just not seeing that in anything the district court did. Maybe it could on remand, but I'm not seeing it did it this time. Yes, Your Honor. The reason for the district court's attribution of the drugs to Evans, he stated that it was because of the large amounts that were being distributed within the conspiracy, and Evans was involved in all of those distributions. And in order to understand why it was foreseeable to Evans, it's important to understand the – Putting to one side foreseeability, I think the bigger problem is how do we know that we don't have any findings by the district court that this was within the scope of Evans' agreement to engage in this criminal activity. And I think it's fair to say that was at least kind of put at reasonable dispute here, and then the district court didn't resolve the dispute. Your Honor, it was resolved in that Evans and Douglas were both convicted of all four counts. They were involved in the same conspiracy, so the district court relied on the jury's finding. But that's exactly the thing the guidelines say you can't do. They can't just say because you're guilty of the whole conspiracy, your relevant conduct is anything the whole conspiracy did. That's literally the thing the guidelines say is wrong. Your Honor, the district court's reasoning for applying the methamphetamine to Evans was because of the amounts that were being distributed in the conspiracy, but those were the amounts that Evans was obtaining from Gregory and or Douglas. The standards for a conviction for conspiracy are one thing. It's not the same standard when you're determining the sentence. And that seems to me to be a core problem here for the government. Your Honor, it is a point well taken. The government would argue that even if this court finds that the district court erred in attributing the three kilograms of methamphetamine to Evans, it was harmless error. And the pre-sentence report does a really nice job of calculating the drug weight, not including those three kilograms. But then it specifically disclaims reliance on that. And I understand that on remand people may see it differently and the PSR may now rely on that other drug weight. But all we have is the district court adopting a PSR that specifically says we're not looking at any of that. We're going based just on what was taken from Douglas' truck. I don't think we are in a position on review to say instead we sitting up here we'll attribute the thing that the PSR disclaims. I don't see how we can do that. Maybe the district court can do it after making appropriate findings or getting an amended PSR. But I think you tell me how I can look at a PSR that says we're not relying on that weight and then rely on that weight. Your Honor, the PSR states that they're not relying on that weight because they don't have to. I know why they didn't rely on it. But the fact is they didn't rely on it. I don't see how we can say but we're going to rely on it. That evidence was still presented at trial and found by the jury beyond a reasonable doubt. The standard that the district court has held to its sentencing is a preponderance of the evidence. So the pre-sentence report does a very nice job of calculating that, not including the three kilograms. And that comes out to approximately 16,000 kilograms of converted drug weight. That would put Mr. Evans at a base offense level of 34. If the court then applies the sentencing enhancements... I just think... I'm just unaware of our authority sitting up here to attribute to him drug weights that neither the PSR nor the district court has attributed to him. But maybe we can. Your Honor, it is a point well taken. Again, the district court did preside over the jury trial. The district court had the advantage of hearing all of the evidence. If the district court had made findings to that effect, we would obviously accord them a great deal of deference and review them only for clear error. But the district court didn't make those findings. The district court did make certain findings as to the drug weight. The district court found that the three kilograms of methamphetamine in Douglas' truck were part of the conspiracy between Evans, Douglas, and Gregory. And he found that based on the substantial evidence that was presented against Evans at trial. And that came from the amount of times that Evans was being resupplied by his Columbus distributors. And the facts in this case are important to show why it was foreseeable to Evans within the scope of this case. I think that I'm just a customer. I'm just a buyer. I'm not part of any of this broader conspiracy. And I may sell a little bit here and there just to pay my debts. But I'm just a buyer. I'm not a conspirator. Gardner, that was not the case here. Evans was not simply a buyer. He was a leader or organizer of this organization. And there was a four-level enhancement applied for that. Well, I've got questions about that one, too. Let me just back up for a minute and tell you my concern here. Kind of bigger, slightly bigger picture. So this is an 80-year sentence. And the district court starts out by applying the wrong legal standard to this crucial threshold question of drug attribution. I think we agree on that. The government also agrees that this two-point enhancement for threats is not backed up. On leadership, you're supposed to apply these seven factors that the district court never addresses. Instead, he relies on one thing that strikes me as a total non sequitur, that he's getting money. Well, he sells drugs. Of course he's getting money. 80-year sentence, and the district court got almost nothing right. Why wouldn't we send this back and have this person properly sentenced? Your Honor, the government submits that if this court finds that the guidelines were not calculated correctly, it is harmless error because it would be the same outcome if we consider the historical drug weight that was testified to at trial. I'm sorry, what's your point? If we ditch all three of these enhancements, you say no difference? Your Honor, the enhancements we argue were applied correctly. I understand that, but if we disagreed and we decided at least for the drug weight and the threat of violence, and I think you're conceding that the district court was wrong on that one, aren't you? All right. Let's just stick with those two. Is it your argument that if we toss those two, then it's still harmless error? Yes, Your Honor. If this is remanded and the court recalculates the base offense level and the sentencing guidelines, based on the pre-trial statements from Timothy Lori, Richard Worf, the trial testimony from Jesse Perez, it is still going to come out to a base offense level of 36. I just want to make sure. I feel like there's two kinds of harmless error in the air, right? So you're saying no matter what we do, the guidelines range will not change. It's going to come out life. That is, you're not saying that if the guidelines range had not been life, it's clear that he would have gotten this sentence. You're just arguing that the guidelines range doesn't change. That is correct, Your Honor. Okay, I don't understand that. If we say that there is no proper drug attribution in this case, this is because you think we should attribute the alternative 34-level drug state. We should make our own drug attribution and that's what makes it harmless error. If we didn't do that, we would have to send the sentence back because that would mean zero is attributed to him as of now. If you find that the court erred in attributing the three kilograms, yes, Your Honor, that is correct. But if the court finds that the other drug weight calculated in the pre-sentence report is sufficient, that gets to a base offense level of 34. The sentencing enhancements were correctly applied. Is that drug weight the one the PSR didn't rely on? Yes, Your Honor. All right, well, we're kind of going around in circles here. So if we say as of right now with the drug weight enhancement and the threat of violence, that those both come out to be zero, do you agree that the case would have to go back? If this court finds that the district court erred in applying the three kilograms, yes, Your Honor. However, I want to touch just one more time on the alternative drug weight that was calculated in the pre-sentence report. That testimony was trial testimony that was found beyond a reasonable doubt by the jury. The district court would only have to find that evidence. Well, that just suggests the PSR also screwed up and there was an easier way to get to the same place. Look, none of this is your fault. You didn't do any of this. But that just suggests the PSR should have calculated drug weight differently and if they'd done that, we might not have this problem, right? Your Honor, you are correct in stating that if we relied on that other historical drug weight, we would be at the same place. It would be a base offense level of 34 and then applying these enhancements, it would get us back up above a total offense level of 43, which would have a guideline range of life. Judge Harris mentioned, I mean, the third type of harmless error that we often see in sentencing appeals is we sometimes have district court judges say, look, the guidelines are complicated, the guidelines are hard, there are some judgment calls, but I've analyzed 3553 and even assuming I got the guidelines wrong, I'm going to give this defendant the exact same sentence. And we've said we get a lot of deference when district court judges say that, but we don't have a statement like that from the district court here, right? There's no, even if I screwed up a bunch of guidelines issues, I would still, as an exercise of my discretion, impose this sentence. We don't have that? Your Honor, we have a statement to that effect as to the sentencing enhancements. The district court did state in overruling the objections to those enhancements, he stated, even if I rule against one or more of these enhancements, the sentence will be the same. Yeah, but he's saying that the sentence before that is because of this 4843 thing. So I agree with you. We have this weird situation where the district court has kind of like five free points here before this, but I don't understand him to be saying, even if the guidelines range were not what he's saying, these errors would not affect the guidelines range. There's nowhere where he says, even if the guidelines range went down to say 30 to 40 years, I would still give this guy 80 years. He doesn't say that. And I do want to touch on the sentencing enhancements that were applied. The first sentencing enhancement that was applied was a four-level increase for Evans' role in the offense. The district court found that he was a leader or organizer. Can I ask you just a very quick clarifying question about that before you run out of time? Am I reading the guidelines right? That if the extra enhancement for criminal livelihood applies only if he gets this role enhancement? That is my understanding of the guidelines. Yes, Your Honor. So this is really basically a six-point issue. Yes, Your Honor. The increase for the role in the offense was correctly applied. The evidence at trial did show that Evans was a leader or organizer of a conspiracy involving more than five people. It's indisputable that this conspiracy involved more than five people. In fact, Evans had... He says he wasn't a leader. He says he was a seller, and that's why he was getting money because that's what drug sellers do. And the only thing the district court said was he must have been a leader because he got money. That is correct, Your Honor. However, the evidence presented at trial showed significantly... I actually am inclined to... Here's my concern about this. I don't know why the district court gave him the leader. The district court said one thing that's wrong. It is hard for me to review that. I agree with you that there are hints in the record, at least, that this might have been appropriate. I sure would have liked the district court to apply the relevant factors and then explain why the district court thought this was appropriate because I agree with you. He's in the best position, but he didn't do it. Your Honor, he relied on the fact that individuals were sending him money through these Walmart-to-Walmart transactions, and I would note that that money that these individuals were sending to Evans was money for drugs that were fronted to them. And this court has indicated that fronting drugs oversteps a mere buyer-seller relationship and that individual assumes a position of control. And while in United States v. Kobe, this court indicated that fronting drugs standing alone may not be sufficient, we have significantly more than that in the record. We have... I'm good. Your Honor, I see my time has expired. If there are no further questions... Thank you very much. Mr. Yamamoto? Your Honor, when you start taking away some of these enhancements and drug amounts, you get down to 42 or less. At that level, you're looking at 360 to life instead of life. So, if it goes lower than that, the guidelines are lower. That's a possibility, a strong possibility here that a re-evaluation of the guidelines will come out with a different sentence. Unless the court has some questions, I'm fine. All right. Mr. Yamamoto, I see you were court-appointed and I want to express the court's appreciation to you for taking on representation in cases like this. We'll now come down to Greek counsel and move on to our last case. Thank you.
judges: G. Steven Agee, Pamela A. Harris, Toby J. Heytens